IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 08-cv-02626-MSK-CBS

MARCO CARANI, and
SHELLEY DEMARIE CARANI,

        Plaintiffs,

v.

DARREL MEISNER,
J.R. BOULTON,
SAMUEL STEWART,
KIRK WILSON,
JOHN HIER,
WANDA NELSON,
ERIN SIMS,
WILLIAM SAPPINGTON,
LOU VALLARIO,
SCOTT DAWSON, and
GARFIELD COUNTY DETENTION CENTER,

        Defendants.

_____

## OPINION AND ORDER GRANTING MOTION TO DISMISS
_____

**THIS MATTER** comes before the Court pursuant to Defendant Erin Sims' Motion to

Dismiss **(# 36)**, the Plaintiffs' response **(# 54)**, and Ms. Sims' reply **(# 62)**.

## FACTS

According to the Second Amended Complaint **(# 41)**, on October 31, 2007, Ms. Sims

found stickers placed on her car reading "slut" and "home-wrecker," and at some point on that

same day, a person in a passing car yelled "home-wrecker" at her. Ms. Sims reported these

incidents to both the police of the City of Rifle, Colorado, as well as to the Human Resources

1

Department of the City of Rifle, where Ms. Sims was employed.[1]  Ms. Sims allegedly told the police that she believed Plaintiff Shelley Carani was responsible for these acts, although the Second Amended Complaint alleges that Ms. Sims had not factual basis for that belief.  Rifle police investigated the matter further, and on November 2, 2007, arrested Ms. Carani and charged her with felony harassment, stalking, and domestic violence.  The charges were ultimately dismissed.

The Plaintiffs assert four claims against Ms. Sims: (i) extreme and outrageous conduct; (ii) an apparent tort claim for "willful and wanton conduct," in that Ms. Sims "must have realized that [her] conduct was dangerous and was nevertheless carried out . . . heedlessly and recklessly, without regard to the consequences or the rights and safety of the Plaintiffs"; (iii) a claim captioned "false imprisonment" and expressly asserted against Ms. Sims, but the body of which claim refers only to the "Rifle Police Department Defendants"; and (iv) a claim by Mr. Carani that, "as a result of the negligence of [Ms. Sims]," he suffered a loss of consortium.

Ms. Sims moves to dismiss (**# 36**) all of the claims against her, arguing: (i) the claims are barred by the Colorado Governmental Immunity Act ("CGIA"), C.R.S. § 24-10-101 *et seq.* (Ms. Sims is an employee of the City of Rifle and thus, contends she is subject to the protections of the CGIA under C.R.S.§ 24-101-103(4)(a)) because the Plaintiffs have not sufficiently alleged "willful and wanton misconduct," C.R.S. § 24-10-118(2)(a); (ii) the outrageous conduct claim fails because the Plaintiffs do not allege sufficiently outrageous conduct; (iii) that there is no independently cognizable claim for "willful and wanton conduct," and that, in any event, the

---

[1]Although both Ms. Sims and Plaintiff Marco Carani were employees of the City of Rifle up to October 31, 2007, the Second Amended Complaint does not indicate whether these incidents occurred at or near Ms. Sims' work premises, home, or elsewhere.

Plaintiffs fail to allege conduct rising to the level of willful and wanton; (iv) with regard to the

false imprisonment claim, the Plaintiffs fail to allege that Ms. Sims intended to cause the

Plaintiff's freedom of movement to be restricted; and (v) the loss of consortium claim fails to

allege any negligence and that the dismissal of all tort claims by Ms. Carani effectively precludes

any loss of consortium claim.

**ANALYSIS**

**A.  Immunity**

Ms. Sims first seeks dismissal of the claims against her for lack of subject matter

jurisdiction, on the grounds that the CGIA renders her immune from such claims.  The CGIA

provides that "no public employee shall be liable for injuries arising out of an act or omission

occurring during the performance of his or her duties and within the scope of his or her

employment, unless such act or omission was willful and wanton."[2]  C.R.S. § 24-10-105(1).  The

statute essentially extends the State of Colorado's sovereign immunity to employees of a

municipality.  C.R.S. § 24-10-103(4)(a) (discussing purpose of CGIA).

A claim of sovereign immunity implicates the Court's subject-matter jurisdiction.  *E.F.W.*

*v. St. Stephen's Indian High School,* 264 F.3d 1297, 1302-03 (10th Cir. 2001); *Fletcher v. United*

---

[2]Beyond the assertion that Mr. Carani and Ms. Sims were both employed by the City of Rifle, and that Ms. Sims also complained about the notes on her car to the City's Human Resources Department, nothing in the Second Amended Complaint suggests that, when making her complaints to the police about the notes,  Ms. Sims was purporting to be performing her work duties and acting within the scope of her employment.  Absent a showing that the complaints to the police were an act taken by Ms. Sims in her capacity as a public employee – as opposed to acting as a private citizen who just happened to be employed by the City – the CGIA would not be applicable here.  The Plaintiffs' response to Ms. Sims' motion does not challenge the invocation of the CGIA on this point, and thus, the Court will not consider that issue *sua sponte*.

3

*States*, 116 F.3d 1315, 1324 (10th Cir. 1997).  Although sovereign immunity is recognized as an affirmative defense, it is clear that the party seeking to sue a defendant that enjoys sovereign immunity bears the burden of showing that such immunity has been waived.  *See e.g. James v. U.S.*, 970 F.3d 750, 752 (10th Cir. 1992); *Smith v. Board of Education*, 83 P.3d 1157, 1167 (Colo. App. 2003).[3]  Thus, it is the Plaintiffs' burden here to plead facts sufficient to allege that Ms. Sims' conduct was "willful and wanton," so as to take her outside the protection of the CGIA.

Whether a plaintiff has pled sufficient facts to allege willful and wanton conduct is a matter to be determined by the Court.  For purposes of the CGIA, a person engages in "willful and wanton" conduct when that person "purposefully pursued a course of action or inaction that he or she considered would probably result in harm" to the plaintiff.  *Castaldo v. Stone*, 192 F.Supp.2d 1124, 1141 (D. Colo. 2001).   Thus, the Court examines the allegations in the Second Amended Complaint to determine whether the Plaintiffs have alleged facts that would suggest that Ms. Sims "purposefully" acted in a which which she considered "would probably result in harm" to the Plaintiffs.

At best, the Second Amended Complaint asserts only that Ms. Sims "accused Mrs. Carani of [leaving the stickers], despite having no factual basis for doing so."  *Docket* # 41, ¶ 14.  This is insufficient to plead "willful and wanton conduct."  An essential component of the definition of willful and wanton conduct is that the actor specifically contemplated that his or her actions may cause harm to another and thereafter proceeded to act heedless of that risk of harm; it is this recklessness that distinguishes "willful and wanton" conduct from simple negligence.

---

[3]Ms. Sims' motion also alleges that the Plaintiffs have the burden of showing that immunity is not available, and the Plaintiffs' response does not purport to challenge this assertion.

4

*See e.g. Castaldo*, 192 F.Supp.2d at 1142 (finding that conduct that "while possibly negligent or arguably grossly negligent" did not rise to the level of "willful and wanton").  The Second Amended Complaint is silent as to Ms. Sims' state of mind when she made accusations to the police.  The Plaintiffs do not allege, for example, that Ms. Sims made an unsupported accusation about Ms. Carani to the police with the intention that the police arrest an innocent person; an allegation to this effect might be sufficient to demonstrate "willful and wanton" conduct.  On the other hand, the mere assertion that Ms. Sims' report was unfounded does not permit one to infer that Ms. Sims made that report having entertained the possibility that an unsupported accusation may cause harm to Ms. Carani; Ms. Sims may have reported her suspicions to the police as nothing more than that – suspicions – trusting that the police would throughly investigate the matter before deciding to make an arrest.  In such circumstances, Ms. Sims' conduct might, at best, be said to be negligent.

Thus, because the allegations in the Second Amended Complaint fail to adequately plead facts that would show that Ms. Sims' conduct would rise to the level of "willful and wanton," and because the Plaintiffs do not otherwise challenge Ms. Sims' invocation of the CGIA, the Court finds that the Plaintiffs have failed to carry their burden of showing that sovereign immunity is not available to Ms. Sims under the CGIA, and thus, Ms. Sims is entitled to dismissal of the claims against her for lack of subject matter jurisdiction.

**B.  Failure to state a claim**

Because the Court has significant reservations that Ms. Sims' invocation of the CGIA is proper here, *see supra.* n. 2, notwithstanding the Plaintiffs' failure to challenge it on such grounds, the Court proceeds to address the sufficiency of the pleading of each of the individual

claims and finds that such claims would nevertheless be subject to dismissal under Fed. R. Civ. P. 12(b)(6) in any event.

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-plead allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The Complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Benefield v. McDowall*, 241 F.3d 1267, 1270 (10th Cir. 2001); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

Two recent decisions from the Supreme Court have clarified the analysis that the Court undertakes when reviewing a pleading under Rule 12(b)(6) standards. First, although "detailed factual allegations" are not required, a complaint must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, the complaint must have sufficient factual assertions "to raise a right to relief above the speculative level." *Id.* Second, because the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," the court must first identify and disregard averments that "are no more than conclusions [which] are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). The court then examines the remaining, well-pled factual allegations, assuming their veracity, and determine whether the plausibly give rise to an entitlement to relief. *Id.*

6

1. <u>Outrageous conduct</u>

A claim for outrageous conduct lies under Colorado law where: (i) a defendant engages in extreme and outrageous conduct; (ii) does so recklessly, or with the intent to cause the plaintiff severe emotional distress; and (iii) the plaintiff suffers severe emotional distress as a result. *Palmer v. Diaz,* ___ P.3d ___, 2009 WL 1331097 (Colo. App. May 14, 2009). The claim is available in response to a "very narrow type of conduct" – that is, conduct that "is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society." *Green v. Qwest Services Corp.*, 155 P.3d 383, 385 (Colo. App. 2006); *see also Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1350 (Colo. 1988) (facts alleged must arouse such resentment against the defendant in average members of the community as to lead them to exclaim, "outrageous!"). Although the question of whether conduct is outrageous is generally a question for the factfinder, the Court may dismiss a claim if it finds that reasonable minds could not differ on the question. *English v. Griffith*, 99 P.3d 90, 93 (Colo. App. 2004).

Here, the only act of outrageous conduct alleged against Ms. Sims is that, in complaining to the police about the stickers and other harassment, she accused Ms. Carani of being the perpetrator without having a factual basis for doing so.  This is somewhat analogous to the situation in *Churchey.*  There, the plaintiff had been terminated from her employment based on what she alleged was a false accusation that she had exhibited dishonesty.  759 P.2d at 1338. Although the Colorado Supreme Court ultimately concluded that her claim for defamation based on the false accusation could proceed to trial, the Court affirmed the lower court's grant of

7

summary judgment to the employer on the plaintiff's claim for outrageous conduct.[4]  *Id.* at 1350-52.  Similarly, in *Dorr v. C.B. Johnson, Inc.,* 660 P.2d 517, 520-21 (Colo. App. 1983), the court affirmed a grant of summary judgment to a defendant on a claim of outrageous conduct where, following a traffic accident involving the plaintiff, the defendant had, among other things, published unspecified slanderous statements about the plaintiff's driving in a report submitted to the Colorado Department of Labor and Employment and had made statements to third parties falsely alleging that the plaintiff had been intoxicated at the time of the accident.  Even viewing the totality of the defendant's alleged conduct as a whole, the court concluded that the plaintiff had failed to allege sufficiently outrageous conduct.  *Id.*  These cases suggest that false accusations of misconduct – even false accusations that a person has engaged in criminal conduct – fail to rise to the level of sufficient outrage.

Curiously, the Plaintiffs cite to no caselaw expressly upholding a claim of outrageous conduct in these circumstances.  Instead, they argue, without supporting citation, that "Colorado law is clear that falsely accusing someone of a crime is *per se* defamatory, and hence outrageous and reckless."[5]  The Court need not address the validity of the former premise – that a false

---

[4]The Colorado Supreme Court's opinion in *Churchey* recites numerous acts that the plaintiff contended supported the outrageous conduct claim, including: her termination for dishonesty, the employer's failure to follow its own personnel policies, allowing the employer's nurse to override instructions from the plaintiff's own doctor, and her supervisor mistakenly blaming her for an action she did not commit.  *Id.* at 1350.  The Court's discussion of its reasoning only specifically addressed the contention that failure to follow personnel policies constituted outrageous conduct.  *Id.*  Nevertheless, the Court affirmed the grant of summary judgment on the outrageous conduct claim in its entirety, suggesting that it found none of the alleged acts, individually or in concert, to rise to the level of sufficiently outrageous.

[5]In a footnote to this sentence in their response brief, the Plaintiffs muse about the possibility that they should seek to amend the Second Amended Complaint to assert a defamation claim against Ms. Sims.  The Court does not construe this ambivalent statement to

accusation of a crime is *per se* defamatory– but notes that the latter premise – that conduct

supporting a viable claim for defamation automatically constitutes outrageous conduct – is belied

by both *Churchey* and *Dorr*.  In both cases, the court permitted a defamation claim to proceed

while simultaneously dismissing outrageous conduct claims premised on the very same

statements.  *E.g. Dorr*, 660 P.2d at 520-21 (finding that it was error to dismiss the slander *per se*

claim on the pleadings, but affirming the dismissal of the outrageous conduct claim based, in

part, on those slanderous statements).

Accordingly, were the Court to reach the issue of the sufficiency of the Plaintiffs'

pleading of the claim for outrageous conduct, the Court would dismiss that claim pursuant to

Fed. R. Civ. P. 12(b)(6).

### 2. Willful and wanton conduct

The Plaintiffs purport to assert a freestanding claim for "willful and wanton conduct."  As

best this Court can determine, Colorado law does not recognize an independent cause of action

of this type.  As discussed above, an allegation of willful and wanton conduct is a necessary

element that must be plead to overcome the operation of the CGIA (or to entitle a party asserting

other types of claims to access enhanced damages), but this Court's research (and the Plaintiffs'

briefing) identifies no case that recognizes and defines a separate, actionable claim based simply

---

constitute a request for leave to amend.  Such a request – essentially a motion contained within a
response brief – would be inappropriate under D.C. Colo. L. Civ. R. 7.1(C).  Moreover, the
Court notes that, according to the Scheduling Order **(# 60)**, the deadline for parties to seek leave
to amend pleadings was April 3, 2009, a date which has passed with no formal motion seeking
leave to amend having been filed by the Plaintiffs.

on a party engaging in willful and wanton conduct towards another.[6]

In any event, even if the Court concluded that a standalone claim for "willful and wanton conduct" existed, for the reasons stated above, the Court would find that the bare assertion that Ms. Sims made an accusation to police that lacked any factual basis is insufficient to allege "willful and wanton conduct" as that phrase is defined by Colorado law. Accordingly, Ms. Sims would be entitled to dismissal of this claim under Rule 12(b)(6).

3. <u>False imprisonment</u>

The precise nature of the Plaintiffs' false imprisonment claim against Ms. Sims is unclear for several reasons. First, and perhaps most importantly, the body of that claim makes no accusations whatsoever against Ms. Sims. For that reason alone, the Court would dismiss the claim under Rule 12(b)(6). Second, that claim is asserted against both certain Rifle police officers – individuals who are clearly state actors and thus, liable for false imprisonment under both 42 U.S.C. § 1983 and Colorado tort law – and against Ms. Sims, a private citizen, without clearly indicating the basis upon which the Plaintiffs seek to proceed. Given the clear difficulties the Plaintiffs would have in pursuing a § 1983 claim against Ms. Sims, the Court will assume that the Plaintiffs intend to assert a false imprisonment claim against Ms. Sims only insofar as such a claim is recognized under Colorado common law.

---

[6]Loose terminology in some cases might appear to recognize such a claim. *See e.g. Peterson v. Arapahoe County Sheriff*, 72 P.3d 440, 444 (Colo. App. 2003) ("We conclude that plaintiff alleged sufficient facts to state a claim against the sheriff and the presently unknown deputies for willful and wanton conduct"); *see also Davis v. Paolino*, 21 P.3d 870, 873 (Colo. App. 2001). But careful reading of these cases reveal that the court was merely finding a sufficient averment of willful and wanton conduct to overcome the application of the CGIA. *Peterson, id.* (citing C.R.S. § 24-10-110(5)(a) as the reason why a claim of willful and wanton conduct was necessary).

To state a claim for false imprisonment under Colorado tort law, a plaintiff must allege that the defendant: (i) intended to restrict the plaintiff's freedom of movement; (ii) that the plaintiff's freedom of movement was, in fact, restricted for a period of time, as either a direct or indirect result of an act by the defendant; and (iii) the plaintiff was aware of this restriction on his or her freedom of movement. *Goodboe v. Gabriella*, 663 P.2d 1051, 1055-56 (Colo. App. 1983). Here, even assuming – without necessarily finding – that Ms. Sims' complaint to the Rifle police was the "indirect" cause of Ms. Carani's arrest several days later, the Plaintiffs have failed to allege that Ms. Sims' <u>intended</u> that arrest to take place. Once again, the Second Amended Complaint alleges only that Ms. Sims made a factually-unfounded accusation to the Rifle police; the Plaintiffs do not allege any facts as to Ms. Sims' intentions in doing so. Without such averments of intent, the Plaintiffs have failed to plead the necessary elements of a claim of false imprisonment,[7] and this claim is also subject to dismissal on Rule 12(b)(6) grounds.

## 4. Loss of consortium

Finally, the Court notes that Mr. Carani's claim for loss of consortium against Ms. Sims is entirely derivative in nature. *Schwindt v. Hershey Foods Corp.*, 81 P.3d 1144, 1148 (Colo. App. 2003). In other words, Mr. Carani's claim for loss of consortium is viable only upon proof that Ms. Carani has a viable substantive claim against Ms. Sims. *Id.* Because the Court finds

---

[7]Because the Plaintiffs have failed to allege the necessary element of intent, the Court need not reach the Plaintiffs' argument in their response brief that a complaining witness who initiates an unfounded arrest can be liable for false imprisonment as the "indirect" cause of the restriction of movement. The Court notes, however, that notwithstanding the Plaintiffs' assertion that "Colorado law is clear" on this point, none of the cases cited by the Plaintiffs in support of this position are from Colorado courts or purport to construe Colorado law.

that all of the claims asserted by Ms. Carani against Ms. Sims would be subject to dismissal for failure to state a claim, Mr. Carani's loss of consortium claim must necessarily also fail.

**<u>CONCLUSION</u>**

For the foregoing reasons, Ms. Sims' Motion to Dismiss **(# 36)** is **GRANTED.**  All claims in the Second Amended Complaint against Ms. Sims are **DISMISSED**, and the caption of this action is **AMENDED** to omit any reference to Ms. Sims.

Dated this 26th day of August, 2009

**BY THE COURT:**

_____

Marcia S. Krieger
United States District Judge