IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 08-cv-02626-MSK-CBS

MARCO CARANI, and
SHELLEY DEMARIE CARANI,

        Plaintiffs,

v.

DARREL MEISNER,
J.R. BOULTON,
SAMUEL STEWART,
KIRK WILSON,
JOHN HIER,
WANDA NELSON,
WILLIAM SAPPINGTON,
LOU VALLARIO, and
SCOTT DAWSON,

        Defendants.

_____

**OPINION AND ORDER GRANTING ATTORNEY'S FEES**
_____

**THIS MATTER** comes before the Court pursuant to Defendants Meisner, Boulton, Stewart, Wilson (collectively, the "Rifle Police Defendants"), and Hier, Nelson, and Sappington's (collectively, the "Rifle Public Works Defendants") (both groups collectively, the "Rifle Defendants") Motion for Attorney's Fees **(# 169)**, the Plaintiffs' response **(# 180)**, and the Rifle Defendants' reply **(# 188)**; Defendant Erin Sims' Motion for Attorney's Fees **(# 170)**, the Plaintiffs' response **(# 181**, as supplemented **# 207)**, and Ms. Sims' reply **(# 189**, as supplemented **# 210)**; the Plaintiffs' Motion for Review of Taxation of Costs **(# 196)**, and the Rifle Defendants' response **(# 197)**; the Rifle Defendants' Supplemental Motion for Attorney's

1

Fees **(# 208)**, and the Plaintiffs' response **(# 211)**, which the Court treats not as motions but as supplemental briefing on the existing motions for fees. The Court has also reviewed the transcript **(# 205)** of the parties' December 14, 2010 arguments before Magistrate Judge Shaffer.

## **FACTS**

The procedural background relevant to the instant motions can be discerned from the Court's August 26, 2009 Opinion **(# 90)**, which granted Ms. Sims' motion to dismiss the claims asserted against her and the Court's July 30, 2010 Opinion **(# 166)** granting summary judgment to the Rifle Defendants. Familiarity with those Opinions is assumed.

The Rifle Defendants seek an award of $ 162,406.50[1] in attorney's fees, based on C.R.S. § 24-10-110(5)(c). That statute provides that the Court must award attorney's fees in favor of a defendant where: (i) the defendant is a public employee; (ii) the claims assert "willful and wanton" conduct; (iii) the plaintiff seeks punitive damages; and (iv) the defendant substantially prevails on the claim that the acts were willful and wanton. The motion notes that all of the Rifle Defendants are public employees; the Plaintiffs sought punitive damages; the Plaintiffs' false arrest, slander, outrageous conduct, and false imprisonment claims all alleged willful and wanton conduct; and the Plaintiffs did not prevail on any of these claims.

Ms. Sims seeks attorney's fees in the amount of $ 35,502.50 pursuant to several statutory provisions: (i) C.R.S. § 24-10-110(5)(c), as discussed above; (ii) C.R.S. § 13-17-201, which requires an award of attorney's fees to a defendant who prevails on a motion to dismiss for

---

[1] A supplemental motion by the Rifle Public Works Defendants indicated that $ 15,131.50 of that sum is claimed for the representation of those Defendants alone. Presumably, the approximately $ 150,000 remaining is attributable to the representation of the Rifle Police Defendants.

2

failure to state a claim; or (iii) 42 U.S.C. § 1988, which permits the Court to award attorney's fees to a prevailing defendant in appropriate cases where the Court finds that the plaintiff's action was frivolous.

The Plaintiffs' responses to both motions are similar. The Plaintiffs contend that where the same underlying facts allegedly constitute both state torts and violations of 42 U.S.C. § 1983, the state statute governing fee awards is displaced by 42 U.S.C. § 1988, which permits an award of fees to a prevailing defendant only where the action was frivolous. The Plaintiffs contend that their claims against both the Rifle Defendants and Ms. Sims were cognizable both as state torts and § 1983 claims, and thus, fees may be awarded against them only if the Court finds those claims to have been frivolous (a finding the Plaintiffs argue is not warranted here).

The Plaintiffs also request that the Court review that portion of the Clerk's taxation of costs that awarded $ 4,673.56 in costs relating to deposition transcripts of the various Defendants.

## ANALYSIS

### A. Attorney's fees motions

All Defendants initially seek an award of fees pursuant to C.R.S. § 24-10-110(5)(c). That statute provides:

> In any action against a public employee in which exemplary damages are sought based on allegations that an act or omission of a public employee was willful and wanton, if the plaintiff does not substantially prevail on his claim . . . , the court shall award attorney fees against the plaintiff . . . and in favor of the public employee.

This statute applies to all state-law claims, regardless of whether they are brought in state or federal court. *Robbins v. Jefferson County School Dist.*, 186 F.3d 1253, 1260-61 (10th Cir.

3

1999). However, attorney's fees are not automatically awarded under this statute for claims brought under federal law. *Cherry Creek Aviation, Inc. v. City of Steamboat Springs*, 969 P.2d 812, 814 (Colo. App. 1998).

The award of fees for unsuccessful federal civil rights claims is governed by 42 U.S.C. § 1988, which permits the award of fees to a prevailing party in the court's discretion. Where a defendant is the prevailing party, the Court should award fees against the plaintiff only where the Court has determined that "the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith" or where the action was "vexatious . . . or brought to harass or embarrass the defendant." *Thorpe v. Ancell,* 367 Fed.Appx. 914, 919 (10th Cir. 2010) (unpublished), *citing Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978) *and Hensley v. Eckerhart*, 461 U.S. 424, 429 n. 2 (1983). A "frivolous" suit is one whose legal theory is "indisputably meritless" or whose "factual contentions are clearly baseless." *Id.* Findings of frivolousness are reserved for "rare circumstances," and the mere fact that a suit was dismissed at the pleadings or summary judgment stage does not automatically warrant an award of fees to the defendant. *Id.* at 920.

Thus, the Court's first task is to separate out those claims that the Plaintiffs brought pursuant to state law and those brought pursuant to federal law.

With regard to the Rifle Public Works Defendants, this task is straightforward. According to the Second Amended Complaint **(# 41)**, the only claims asserted against these Defendants were: (i) Mr. Carani's claim for slander; (ii) a claim for outrageous conduct; (iii) a claim for "willful and wanton conduct"; and (iv) a loss of consortium claim by Mr. Carani. None of these claims can even arguably have been asserted under federal law, and thus, all are

subject to the provisions of C.R.S. § 24-10-110(5)(c). With the exception of the loss of consortium claim,[2] each of these claims alleged "willful and wanton" conduct by the Public Works Defendants. *Docket* # 41, ¶ 23, 28, 29. The Plaintiffs sought punitive damages with regard to these claims. *Id.*, Prayer, ¶ d. And it is undisputed that the Defendants prevailed on these claims in their entirety. Accordingly, under C.R.S. § 24-10-110(5)(c), these Defendants are entitled to an award of attorney's fees incurred in defending the claims against them. The Court will turn to the amount of fees awardable to the Public Works Defendants in a moment.

Turning to the Rifle Police Defendants, the task is more complicated. Of the five claims asserted against these Defendants, three – outrageous conduct, willful and wanton conduct, and loss of consortium – are identical to the claims asserted against the Public Works Defendants and, lacking any federal analogue, warrant an award of fees under C.R.S. § 24-10-110(5)(c) for the same reasons. The remaining two claims asserted only against the Rifle Police Defendants are claims for false arrest and false imprisonment, that are capable of being asserted under state law, federal law, or both. As the Court noted in its July 30, 2010 Opinion, and as observed by the Magistrate Judge during oral argument, the vague and imprecise pleading of these claims in the Second Amended Complaint gives no clear indication of which law the Plaintiffs were invoking with these claims.

Assuming, as the Plaintiffs contend, the false arrest and false imprisonment claims were

---

[2] As pled by the Plaintiffs, the loss of consortium claim sounded in negligence, rather than willful and wanton conduct. This particular pleading decision is somewhat inexplicable, as no other claim in the Second Amended Complaint sounded in negligence. In any event, the loss of consortium claim was entirely derivative of the remaining claims in the case, and thus, to the extent the Plaintiffs are liable for attorney's fees on those claims, the derivative nature of the loss of consortium claim would warrant imposing fees relating to that claim as well.

asserted, at least in part, under federal law, the analysis under 42 U.S.C. § 1988 would control the question of whether fees should be awarded. Having considered the parties' arguments on this point, this Court finds that the Plaintiffs' false arrest and false imprisonment claims are were indeed frivolous under that exacting standard.

Turning first to the false arrest claim, the Court finds nothing in the Plaintiffs' submissions with regard to that claim that would suggest that they were ever capable of asserting a colorable false arrest claim.[3] As the Court's July 30, 2010 Opinion explains, the sufficiency of the Rifle Police Defendants' belief that they possessed probable cause for Ms. Carani's arrest on a charge of harassment - stalking is examined in light of the facts as they appeared to the Defendants at the time of that arrest. The Court's Opinion explains in detail the facts as they appeared to the Defendants, including the undisputed fact that Ms. Carani understood that Mr. Wilson, the police officer investigating the incidents, was under the impression that Ms. Carani had personally committed all of the conduct directed at Ms. Sims and Ms. Carani consciously and purposefully chose not to disabuse Mr. Wilson of that notion. The Court finds that a false arrest claim by the Plaintiffs in this circumstance was utterly frivolous and vexatious. By

---

[3]Admittedly, the Court notes that the Plaintiffs both pled and proved the basic elements of a false arrest claim, showing that Ms. Carani was intentionally detained by the Rifle Police Defendants and that she was aware of that detention. By definition, these elements will be proven in essentially <u>every</u> false arrest claim brought against police officers. The true dispute over this claim – and the place where the Plaintiffs' position lacked any arguable merit – was over the Rifle Police Defendants' ability to prove their affirmative defense that Ms. Carani's arrest was privileged as a result of these Defendants' probable cause to believe that she had committed a crime. This Court sees no reason to refrain from awarding fees under § 1988 where the Plaintiffs' frivolous position was in response to an affirmative defense of privilege, rather than in proving the *prima facie* elements of the claim. To find otherwise would essentially insulate patently frivolous claims of false arrest and false imprisonment from the reach of § 1988.

deliberately refusing to correct what she knew was a mistaken impression by Mr. Wilson as to the extent of her culpability, Ms. Carani effectively invited her own arrest. In such circumstances, she cannot thereafter contend that that arrest was unjustified.

The Court then turns to the false imprisonment claim, and finds it to be so clearly factually baseless as to be frivolous. The Plaintiffs' theory was that Mr. Wilson caused Ms. Carani's imprisonment to be unnecessarily prolonged by including a notation that her arrest was for a "domestic violence" offense, thereby preventing Ms. Carani from being allowed to post bond. The Court's July 30, 2010 Opinion acknowledges that, if factually established, this theory "might arguably support an independent false imprisonment claim." However, the Court finds that the Plaintiffs never possessed a factual basis to support such a claim. As the Court's Opinion explains, a necessary element of this claim is that, by including the domestic violence notation, Mr. Wilson <u>intended</u> to prolong Ms. Carani's incarceration. The Plaintiffs never pled facts nor supplied evidence to suggest that they ever had any basis to believe that this was Mr. Wilson's actual intent. Mr. Wilson denied having such intent in his own deposition, and the Plaintiffs do not claim to have (and certainly never produced) evidence to refute this contention.[4] Because they do not appear to have ever had any meaningful evidence on an essential element of the claim, the Plaintiffs' false imprisonment claims was thus frivolous, warranting an award of fees under § 1988.

Finally, with regard to Ms. Sims, the claims asserted against her were false arrest,

---

[4] At best, the remaining evidence cited by the Plaintiffs indicates that there was some uncertainty and disagreements among District Attorneys as to whether the endorsement was proper here. Even taken in the light most favorable to the Plaintiffs, this evidence would only show that Mr. Wilson's decision to add the domestic violence notation was, at most, negligent, rather than a purposeful decision to prolong Ms. Carani's detention.

7

outrageous conduct, willful and wanton conduct, and loss of consortium. The analysis above with regard to each of the clearly state law claims is equally applicable here, and Ms. Sims would be entitled to attorney's fees for defending those claims under C.R.S. § 10-24-110(5)(c). With regard to the false arrest claim against Ms. Sims, the Court notes that false arrest claims are cognizable under both state and federal law, but the Court finds that no colorable false arrest claim could be asserted under the facts here. As explained in the Court's August 26, 2009 Opinion, an essential element of a false arrest claim under federal law is that the defendant was acting as a state actor at the time of the challenged conduct. Here, although Ms. Sims was employed by the government, there is absolutely nothing in the record to suggest that her complaints to police were made in her capacity as a state actor, rather than as a private citizen. The Plaintiffs have never offered any explanation of a colorable legal theory that would justify treating the false arrest claim against Ms. Sims as one under federal law in these circumstances, and thus, the Court concludes that that claim could only have been brought under state law. As a result, Ms. Sims is entitled to attorney's fees for all the claims asserted against her under C.R.S. § 24-10-110(5)(c).

Consequently, the Court concludes that Ms. Sims and all of the Rifle Defendants are entitled to an award of attorney's fees against the Plaintiffs, whether under C.R.S. § 24-10-110(5)(c) with regard to any state law claims or under 42 U.S.C. § 1988 with regard to any federal claims. The question then becomes what amount of fees are reasonable in these circumstances. The Rifle Defendants have come forward with billing records for a total of $162,406.50 in fees, and Ms. Sims has come forward with evidence supporting a claim for a total of $ 35,502.50 in fees. With regard to the Rifle Defendants, the Plaintiffs have argued that

certain billing entries are not capable of being segregated as between classes of Defendant here (*i.e.* that it is impossible to say that a given billing record is attributable only to claims against the Rifle Public Works Defendants, as opposed to the Rifle Police Defendants), but the Court sees no argument from the Plaintiffs that, if all of the various groups of Defendants' fee requests are found to have merit, that the hourly rates charged or total number of hours claimed by all Defendants are unreasonable. The Court finds no opposition by the Plaintiffs to either the hourly rate or hours claimed by Ms. Sims. In the absence of such opposition, the Court finds the amounts claimed by the Defendants to be reasonable and awards the Defendants fees in those amounts.

### B. Taxation of costs

On October 12, 2010, the Clerk of the Court taxed **(# 192)** costs against the Plaintiffs in the amount of $ 5,105.47. The single largest component of that award was $ 4,673.56 for deposition expenses, reflecting the costs to the Defendants of transcribing the depositions of six of the Defendants (Ms. Sims, Mr. Wilson, Mr. Stewart, Mr. Boulton, Mr. Meisner, and Ms. Nelson), both Plaintiffs, and two non-party witnesses, Heavan Ortiz-Coolie and Martin Beeson. The Clerk concluded that all 10 depositions were cited to the Court in the Rifle Defendants' summary judgment motion and thus were properly taxed against the Plaintiffs.

The Plaintiffs seek review of that determination, arguing: (i) "expenses of taking depositions are generally not allowed as items of costs"; (ii) "costs related to depositions of persons whose depositions are not used at trial [are] not recoverable costs"; (iii) "discovery deposition" expenses become taxable as costs only if they are used for preparation for trial; (iv) it was improper to tax costs relating to transcribing the Defendants' own depositions, as they

9

"knew what they could aver in an affidavit," and thus, those transcripts were obtained solely for the convenience of counsel; (v) all 10 depositions were "taken simply for discovery purposes" and thus, were not properly taxed; and (vi) even if the transcripts were necessarily obtained, only small parts of each were used in the summary judgment motion and thus, the Court should reduce the total transcription cost proportionately to the amount of the actual transcript that was used in motion papers.

28 U.S.C. § 1920 allows the Court to tax as costs certain items, including the costs of transcribing depositions if those transcripts were "necessarily obtained for use in the case." The party seeking an award of costs bears the burden of showing the necessity of the costs incurred. *Allison v. Bank One-Denver*, 289 F.3d 1223, 1248-49 (10th Cir. 2002).

Whether an item is "necessarily obtained for use in the case" is a fact-based inquiry, committed to the discretion of the Court. *Aerotech Resources, Inc. v. Dodson Aviation, Inc.*, 237 F.R.D. 659, 665 (D.Kan. 2005). For example, where a case is "sufficiently lengthy, complex, [or] contentious" that a transcript is reasonably necessary for effective and efficient trial preparation or presentation, transcription costs might be allowed. *Compare Burton v. R.J. Reynolds Tobacco Co.*, 395 F.Supp.2d 1065, 1079 (D.Kan. 2005) *with Battenfeld of America Holding Co. v. Baird, Kurtz & Dobson*, 196 F.R.D. 613, 618 (D.Kan. 2000) (finding that trial was not so complex that daily transcripts were taxable). On the other hand, transcriptions that are obtained solely for discovery purposes or for the "convenience of counsel" are generally not taxable. *Id.; Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 878 F.Supp. 1417, 1427 (D.Kan. 1995). Necessity is judged as of the time the transcription was sought, not in hindsight. *In re Williams Securities Litigation - WCG Subclass*, 558 F.3d 1144, 1147-48 (10th Cir. 2009); *U.S. Industries, Inc. v. Touche Ross &*

*Co.*, 854 F.2d 1223, 1248 (10th Cir.1988).

Courts have typically indulged in a presumption that transcripts supplied by a party in a dispositive motion and "actually utilized by the court in considering" and resolving that motion were "necessarily obtained" and thus, taxable. *James v. Coors Brewing Co.*, 73 F.Supp.2d 1250, 1261 (D.Colo. 1999), *citing Tilton v. Capital Cities/ABC, Inc*., 115 F.3d 1471, 1474 (10th Cir.1997); *Crandall v. City and County of Denver*, 594 F.Supp.2d 1245, 1250 & n. 6 (D. Colo. 2009), *citing Summit Technology Corp. v. Nidek Co., Ltd.*, 435 F.3d 1271, 1380 (Fed. Cir. 2006). All 10 of the depositions in question here were cited by the Defendants in their summary judgment motion, all were reviewed by the Court in considering the merits of that motion, and all were discussed – either directly quoted from or incorporated into the Court's various findings of fact – as part of the Court's summary judgment decision.[5] Thus, under the common presumption, all 10 of the depositions would properly be taxed.

The Plaintiffs argue that, at a minimum, the Defendants should not be entitled to recover the costs of obtaining transcripts of their own depositions, as they could have supported the summary judgment motion via their own affidavits instead. In support of this contention, they cite *M.D. Mark, Inc. v. Kerr-McGee Corp.*, 2008 WL 162990 (D. Colo. Jan. 15, 2008) (slip op.) There, the Magistrate Judge refused to tax costs in favor of the plaintiff for deposition transcripts of several witnesses that were "friendly" to the plaintiff, such that the plaintiff "had ready access" to them and "could discuss the case with [them] at its convenience and did not require a

---

[5]In their response to the summary judgment motion, the Plaintiffs themselves cited and attached portions of the deposition transcript of Ms. Ortiz and Mr. Beeson. It seems particularly inappropriate to conclude that the Plaintiffs could find it "necessary" to transcribe these depositions but the Defendants could not.

deposition to know the nature of" the witness' testimony. *M.D. Mark* is silent as to the circumstances under which each of these witnesses were deposed, a fact that makes it unpersuasive to this Court in the circumstances presented here. The Court would be disinclined to allow the Defendants to tax the costs of transcribing their own depositions if those depositions were, for some reason, noticed by the Defendants themselves; in such circumstances, the Defendants calling for their own depositions is largely[6] indistinguishable from the Defendants simply drafting their own affidavits. But if the depositions were noticed by the Plaintiffs, the Court is more inclined to permit the Defendants to tax the costs of obtaining transcripts of those depositions. In those circumstances, requiring the Defendants to move for summary judgment on the basis of their own affidavits, rather than a transcript of their own recorded deposition testimony, places them at an undue disadvantage – it introduces the possibility that the affidavits might differ in wording from the deposition testimony, thus opening the door to impeachment or allegations that the affidavits do not squarely match the deposition testimony. Without some showing that the Defendants' transcribing of their own depositions occurred in doubtful circumstances, the Court is not inclined to deviate from the common presumption that making substantive use of the depositions in a dispositive motion is sufficient indication that the transcripts were "necessarily obtained" for use in the case.

Finally, the Court summarily rejects the Plaintiffs' suggestion that the Court proportionately reduce the amount of costs taxed for deposition transcripts to reflect the percentage of the whole transcript actually filed with and considered by the Court. The Plaintiff

---

[6]But not entirely. The Court can conceive of some circumstances where a defendant might properly notice his or her own deposition – *e.g.* to preserve his or her testimony or recollection in anticipation of being unable to testify at trial.

cites to no authority for the proposition that such a proportionate reduction is proper, and this Court declines to so find. Indeed, such a rule contravenes the clear law that the necessity of obtaining transcripts must be judged from the circumstances as they appeared at the time transcription was sought, not in hindsight. The fact that only small parts of a transcript were used later in the case is not evidence that the entire transcript was unnecessarily obtained at an earlier point in time.

Accordingly, the Plaintiffs' Motion to Review Taxation of Costs is granted in part, insofar as the Court has reviewed the costs taxed by the Clerk, and denied in part, insofar as the Court declines to alter that taxing of costs.

## **CONCLUSION**

For the foregoing reasons, the Rifle Defendants' Motion for Attorney's Fees **(# 169)** is **GRANTED**, and fees are assessed in favor of the Rifle Defendants and against the Plaintiffs in the amount of $ 162,406.50. Ms. Sims' Motion for Attorney's Fees **(# 170)** is **GRANTED**, and fees are assessed in favor of Ms. Sims and against the Plaintiffs in the amount of $ 35,502.50. The Judgment **(# 167)** is **DEEMED AMENDED** to award these sums to the Defendants and against the Plaintiffs. The Plaintiffs' Motion for Review of Taxation of Costs **(# 196)** is **GRANTED IN PART**, insofar as the Court has reviewed the items of costs designated by the Plaintiffs, and **DENIED IN PART**, insofar as the Court finds that those costs were properly

taxed.  The Rifle Defendants' Supplemental Motion for Attorney's Fees **(# 208)** is **DENIED AS MOOT**, insofar as the Court has treated that motion as supplemental briefing in support of the Rifle Defendants' earlier motion for fees.

Dated this 31st day of March, 2011

                                              **BY THE COURT:**

                                              Marcia S. Krieger
                                              United States District Judge